IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANGELA DELPHINE WILLIAMS,       )
                                )
                 Plaintiff,     )
                                )
        v.                      )    C.A. No. 17-1228 (MN)
                                )
NANCY A. BERRYHILL, Acting      )
Commissioner of Social Security, )
                                )
                 Defendant.     )

## <u>**MEMORANDUM OPINION**</u>

Gary C. Linarducci, LINARDUCCI & BUTLER, PA, New Castle, DE – attorneys for Plaintiff

Nora Koch, Regional Counsel, Paul K. Nitze, Special Assistant United States Attorney SOCIAL SECURITY ADMINISTRATION, Office of the General Counsel, Philadelphia, PA – attorneys for Defendant.

March 27, 2019
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE:**

## I.     INTRODUCTION

Plaintiff Angela Delphine Williams ("Ms. Williams" or "Plaintiff") appeals the decision of

Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security ("the Commissioner"

or "Defendant"), denying her claim for Social Security Disability Insurance benefits under Title II

of the Social Security Act.  The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Pending before the Court are Plaintiff's motion and Defendant's cross-motion for summary

judgment.  (D.I. 14, 17).  Plaintiff requests "remand of this case for further development and

analysis under the fourth sentence of 42 U.S.C. § 405(g)."  (D.I. 15 at 18).  The Commissioner

requests that the Court affirm the decision denying Plaintiff's claim for benefits.  (D.I. 18 at 20).

For the reasons stated below, the Court will grant-in-part Plaintiff's motion and deny Defendant's

cross-motion for summary judgment.  The case will be remanded.

## II.     BACKGROUND

### A.     Procedural History[1]

On December 9, 2009, Ms. Williams filed an application for Disability Insurance Benefits

under Title II, alleging disability beginning November 6, 2006.  (Tr.[2] 116-117).[3]  The protective

---

[1]     Based on an earlier application, Ms. Williams was granted a closed period of disability from November 6, 2006 through March 5, 2008 ("the Closed Period").  (Tr. 70).  She purportedly agreed to this Closed Period of disability at the insistence of her attorney. (Tr. 37, 110).  A closed period of disability or "closed period" cases are where a disability claimant is found to be disabled for a finite period of time.  *Shepard v. Apfel,* 184 F.3d 1196, 1198 (10th Cir. 1999).

[2]     References to "Tr." are to the "Transcript of Social Security Proceedings" filed on February 7, 2018.  (D.I. 9, 10).

[3]     Plaintiff's December 9, 2009 application states that she became unable to work as of November 6, 2006. (Tr. 116).  In her opening brief in support of summary judgment, however, she states she "protectively filed a new application . . . on May 27, 2009, asserting disability as of December 9, 2009.  (Tr. 116-17, 139)."  (D.I. 15 at 1).

filing date for Plaintiff's December 9, 2009 application is May 27, 2009. (Tr. 139). Plaintiff's claim was initially denied on February 9, 2010 (Tr. 73-76) and again upon reconsideration on May 6, 2010 (Tr. 78-83). Plaintiff then requested a hearing before the Administrative Law Judge ("ALJ") on May 24, 2010. (Tr. 84-85). The hearing took place on January 11, 2011 during which both Ms. Williams and James Ryan, an impartial vocational expert ("VE") testified. (Tr. 24-48). After the hearing, on February 9, 2011, the ALJ issued a decision finding that Plaintiff "has not been under a disability within the meaning of the Social Security Act from March 6, 2008, through the date of this decision." (Tr. 20). By letter dated February 17, 2011, Plaintiff requested review of the ALJ decision by the Appeals Council. (Tr. 110-115). On July 11, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5).

On September 5, 2012, Plaintiff filed suit in the District of Delaware (*Williams v. Astrue*, C.A. No. 12-1098 (GMS)) seeking judicial review of the Commissioner's denial of benefits. (Tr. 514). The Court issued its Memorandum and Order on February 26, 2016 remanding the matter for further proceedings consistent with the Memorandum. (Tr. 488-513).[4] On June 7, 2016, the Appeals Counsel issued an Order remanding the case to an ALJ. (Tr. 485).

A hearing took place on April 28, 2017[5] during which both Plaintiff and Mitchell Schmidt ("Mr. Schmidt"), an impartial VE testified. (Tr. 463-482). After the hearing, on June 7, 2017, the

---

[4]     In the Memorandum, Judge Sleet remanded the matter for the ALJ "to elaborate upon the elements of 20 C.F.R. §404.1527(c) regarding the appropriate weight afforded to Dr. Glassman, a treating physician, and [to] fully address Williams' social limitations" (Tr. 511) and "to substantiate whether any bases exist for [the ALJ's] findings regarding Williams' [activities of daily living], and any side effects and resulting limitations from her medication." (Tr. 513).

[5]     The remand hearing was originally set for Monday, January 9, 2017. However, on the Friday before the hearing, Plaintiff's attorney filed over 1,100 page of new medical

ALJ issued a decision finding once again that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from April 25, 2009, through June 30, 2013,[6] the date last insured." (Tr. 451). On August 30, 2017, Plaintiff again filed suit in the District of Delaware seeking judicial review of the Commissioner's denial of benefits. (D.I. 2). The parties completed briefing on the cross-motions for summary judgment on May 14, 2018. (D.I. 14-15, 17-19).

## B. Factual History

Plaintiff protectively filed for Disability Insurance Benefits ("DIB") on May 27, 2009 and completed her application for DIB on December 9, 2009. (Tr. 116-117, 139). She was 42 years old at the time of the protective filing and the application. Plaintiff became unable to work as of November 6, 2006 at the age of 39, and was 46 years old, which is a "younger individual" as defined by 20 C.F.R. §404.1563(d) on the date last insured. (Tr. 450). She is a high school graduate and completed specialized CNA job training. (Tr. 147). According to her Work History report (Tr. 150-55), she had held a job as a certified nursing assistant from 1991 to November 6, 2006, the date last worked. (Tr. 150).

---

evidence. (Tr. 460). The ALJ adjourned the hearing so that he could have a chance to review all the records before the hearing. (Tr. 461-62).

[6] In his decision, the ALJ noted that "[t]he District Court found that any error in the change of the alleged onset date was 'not actionable error.'" (Tr. 438). Therefore, the ALJ found "no grounds for reopening the prior decision to address the claimant's original alleged onset date of November 6, 2006." (Tr. 438). The ALJ further notes that in a Decision dated April 24, 2009 a former ALJ granted Plaintiff benefits "as of her alleged onset date through March 5, 2008" and also found that Plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act from March 6, 2008, through the date of this decision." (Tr. 438). Therefore, for the remand, the ALJ considered the period from April 25, 2009 (the date after the Decision finding Plaintiff no longer disabled) through June 30, 2013, Plaintiff's last date insured. (Tr. 438).

### 1. Disability Report – December 9, 2009 (Form SSA-3368)

In her Disability Report dated December 9, 2009 (Form SSA-3368) (Tr. 142-49), Plaintiff asserted that she has the following physical or mental conditions that limit her ability to work (Tr. 143): right shoulder impingement; rotator cuff tear; bi-lateral carpal tunnel; minimum bulge discs in back; neck pain; headaches due to pinched nerves in right shoulder; and depression. She indicates that she stopped working because her "condition[s] made it too difficult and painful to work." (Tr. 143). Plaintiff also notes that her doctor told her she could not work because he found additional damage in her right shoulder. (Tr. 143). Plaintiff lists the following medications on her disability report: Cymbalta (depression), Oxycontin (pain), and Xanax (anxiety) all of which were prescribed by Arnold B. Glassman, D.O of Delaware Back Pain & Sports Rehabilitation. (Tr. 147). In addition to Dr. Glassman, Plaintiff lists three providers who may have medical records about her physical and mental conditions: John W. Dettwyler, Ph.D., Dr. Irene Fisher of Delaware Back Pain & Sports Rehabilitation and Neil Kaye, M.D. (Tr. 145-46). On March 24, 2017, Plaintiff's counsel provided an "updated list of all medical providers that [they were] aware of who have treated the claimant during the period or periods at issue." (Tr. 723-24). This listed added Jay Weisberg, PhD., Advancexing Pain & Rehab Clinic, and Dr. Errol Ger. (Tr. 723-24).

### 2. Disability Reports – Appeal (Form SSA-3441)

In her February 19, 2010 Appeal Disability Report (Tr. 170-77), Plaintiff indicates that there have been no changes in her illnesses, injuries, or conditions and she has no new physical or mental limitations as a result of her illnesses, injuries, or conditions (Tr. 171). The only medical provider listed is Dr. Glassman and the listed medications are Alprazolam (anxiety), Cymbalta (depression), and Oxycontin (pain) (Tr. 174).

In her June 18, 2010 Appeal Disability Report (Tr. 172-87), Plaintiff indicated changes in her illnesses, injuries, or conditions as follows (Tr. 182):

> Right shoulder pain radiates down arm, mood swings, panic attacks, nerves, physical and mental health has remained the same since '06. Increased pain level, medication needed to rest 3-4 times a day. Anxiety, bilateral carpal tunnel, headaches, neck, back pain.

She listed new physical or mental limitations as (Tr. 182):

> Severe carpal tunnel, concentration, memory, lack of interest, low drive, neck popping and sharpness increase pain level, mood swings.

And she listed new illnesses, injuries, or conditions as (Tr. 182):

> Severe carpal tunnel, trouble sleeping at night.

Dr. Glassman was the only treating physician listed, and Zolpidem (bedtime sleep) had been added to Plaintiff's medications. (Tr. 183-85).

### 3. Medical History, Treatment, and Conditions

The Court has reviewed all medical records submitted. For purposes of this appeal, the relevant medical history begins in April 2009 and continues through June 30, 2013. (D.I. 9, 10 – Exs. B1F – B8F, B11F, B14F, and B15F).[7]

### a. Physical Conditions

Plaintiff has alleged disability due to conditions including carpal tunnel in both hands, a torn rotator cuff, post impingement syndrome of shoulder, chronic cervico thoracic spine, lumbosacral spine pain with somatic dysfunction, pinched nerves in her shoulders, degenerative disc disease, bulging discs, headaches, and obesity. (D.I. 15 at 3; Tr. 143, 466). She has undergone numerous surgeries for her shoulder and hand issues.

---

[7] Plaintiff's medical history prior to April of 2009 is documented in exhibits submitted (*e.g.,* Ex. B14) and in the Court's earlier opinion *Williams v. Astrue*, C.A. No. 12-1098 (GMS).

### b.    Mental Conditions

In June of 2009, Plaintiff reported that she was "working very hard" to manage her pain and depression secondary to her pain.  (Tr. 248).  She noted that she forced herself to participate in family activities.  (Tr. 248).  Plaintiff reported to a different provider (Dr. Kaye) in October 2009 that her depression did not keep her from working: "Even with her degree of sadness/depression, she feels she could work from a psychiatric/emotional perspective."  (Tr. 1985).

Plaintiff began treatment with Jay G. Weisberg, M.D., in January 2013.  (Tr. 955-989).  He diagnosed her with "major depression" that persisted through the date last insured.  (Tr. 980-989). Dr. Weisberg's exams revealed normal thought processes, intact associations, no suicidal/homicidal ideations, fair insight/judgment, good memory, good fund of knowledge, and fair concentration/attention.  (Tr. 984-89).

### c.    Healthcare Providers

#### 1.    Dr. Glassman, Delaware Back Pain & Sports Rehabilitation Center.

Ms. Williams received treatment primarily from Arnold B. Glassman, D.O., a specialist in physical medicine and rehabilitation, from May 2001 through at least May 2016.  (Tr. 191-387, 409-430, 433-434, 997-2113, 2114-2326).  In July 2010, Dr. Glassman stated that Ms. Williams could never lift and carry on the right and could occasionally lift and carry up to ten pounds on the left.  (Tr. 434).  She could never reach above the shoulder or below desk level with her right arm and could only occasionally reach with her left arm.  (Tr. 434).  He opined that she could occasionally finger and bend at the waist and could never kneel or crouch.  (Tr. 434).  In January 2015, Dr. Glassman opined that Ms. Williams could not perform even sedentary work (Tr. 1621 ).  That opinion does not seem to have changed.

Dr. Glassman noted that Plaintiff's spine was tender to palpation and Plaintiff complained of pain as a "limiting factor" during spine and right upper extremity range of motion exams, but he consistently found that Plaintiff had negative Spurling's tests and negative straight leg raises (tests for cervical and lumbar nerve root impingement). (*See, e.g.*, Tr. 206-429, 1327-1506, 1538-61). Dr. Glassman also consistently found that Plaintiff walked with a normal gait, or at the most a slow gait, but not an abnormal one, nor did she need an assistive device. (*E.g.*, Tr. 206-429, 1327-1506, 1538-61). Dr. Glassman noted positive Tinel's signs of her wrists, but her fine motor coordination was normal. (*E.g.,* Tr. 206-429, 1327-1506, 1538-61). Electrodiagnostic studies during the relevant period showed moderate left wrist carpal tunnel syndrome, but no evidence of cervical or peripheral radiculopathy. (Tr. 416, 1441).

With respect to treatment, Plaintiff routinely took Oxycodone prescribed by Dr. Glassman, but indicated that she did not want further treatment. (*E.g.*, Tr. 206-429, 1327-1506, 1538-61). His notes indicate that Plaintiff stated that her medication "allow[ed] her to better take care of her kids, grandkids, and mother." (Tr. 204). Dr. Glassman documented that, as a result of her medication, Plaintiff's daily living activities increased and analgesia improved. (*E.g.*, Tr. 194, 409, 420, 1327, 1343, 1500, 1543, 1552). Dr. Glassman consistently noted that Plaintiff suffered no serious adverse effects from her medication, except occasional constipation. (Tr. 205, 236, 275, 236, 351, 410, 1330, 1338, 1345). He noted that Plaintiff reported that she did not drive if she was drowsy, but otherwise had "no problems" driving and functioning on her medications. (Tr. 1327, 1343-44, 1405, 1416, 1429, 1490). Dr. Glassman stated that Plaintiff was "handling [her] medication well." (Tr. 1454).

Dr. Glassman completed a Hartford Life Insurance Company "statement of continued disability." (Tr. 433-34). In it he indicated that Plaintiff needed "frequent breaks," but could sit

for six to eight hours and stand/walk up to three hours in an eight-hour workday. (Tr. 434). Dr. Glassman opined that Plaintiff could never lift 1-10 pounds with her right arm and could occasionally lift 1-10 pounds with her left arm. (Tr. 434). According to Dr. Glassman, Plaintiff could never reach with her right arm, but could occasionally reach with her left arm and could occasionally finger bilaterally. (Tr. 434).

In addition to her physical impairments, Ms. Williams also saw Dr. Glassman for depression. (Tr. 143, 1237, 1980, 1990). Ms. Williams was treated with therapy and medication (Tr. 1236-37, 1379, 1989). On examination, she consistently had depressed mood and decreased attention and concentration. (Tr. 955-87, 1979, 1986, 1990). On several visits, Dr. Glassman noted that Plaintiff exhibited crying; otherwise, he repeatedly found that Plaintiff was alert and oriented with a normal mood/affect. (*E.g.*, Tr. 206-429, 1327-1506, 1538-61).

### B.      Errol Ger, M.D.

Ms. Williams saw Errol Ger, M.D., an orthopaedic surgeon, in November 2006, July 2007, October 2007, July 2009, October 2009, September 2013, September 2014, and December 2014. Dr. Ger stated that Ms. Williams could perform only sedentary work with limitations of her right shoulder. (Tr. 1893). Dr. Ger later repeated that Ms. Williams had limitations of strength and motion in her right shoulder. (Tr. 1898). He assessed a 19% impairment relative to her right arm. (Tr. 1901). On September 9, 2013, Dr. Ger added that Ms. Williams was also 7% impaired due to cervical spine impairments, 7% impaired due to her lumbar spine impairments, and 5% impaired due to her left arm impairments. (Tr. 1906). He clarified on September 24, 2013 how he apportioned her impairments with respect to her history. (Tr. 1907). In September of 2014, Dr. Ger opined that Ms. Williams was currently unfit for work due to her recent carpal tunnel surgery and that she would only be able to return to sedentary work after her recovery (though he

noted that those chances were "guarded" because she had been unable to work for eight years). (Tr. 1912).

C.      State Agency Consultants

In February 2010, M. H. Borek, a state agency physician, reviewed the evidence of record. (Tr. 390-97). Dr. Borek opined that Ms. Williams could lift ten pounds occasionally and less than ten pounds frequently, could stand and/or walk at least two hours in an 8-hour workday and sit about six hours in an 8-hour workday. (Tr. 391). He opined that she had limited ability to push and pull in her upper extremities, and to reach in all directions, handle, and finger. (Tr. 391-92). He opined that she could only occasionally perform certain postural activities, such as stooping, kneeling, crouching, or crawling. (Tr. 392). He noted that his conclusions were consistent with Dr. Glassman's (Tr. 392), and that his review supported "sedentary activity capability" (Tr. 396). In May 2010, Nisha Singh, M.D. another state agency medical consultant, reviewed and affirmed Dr. Borek's opinion. (Tr. 432).

On February 7, 2010, state agency psychological consultant, Christopher King, Psy.D., conducted a Psychiatric Review Technique assessment. (Tr. 398-408). He concluded that Plaintiff had depressive disorder and anxiety but that her mental impairments were not severe. (Tr. 398, 401). Dr. King found that Plaintiff had no daily living activity restrictions or extended-duration decompensation episodes, and only mild difficulties in maintaining social functioning and concentration, persistence, or pace. (Tr. 406). Dr. King noted that "there is no indication of any significant functional limitations from a mental standpoint, and her subjective cognitive complaints are not substantiated by any objective findings (as mental status testing consistently revealed grossly intact functioning)." (Tr. 408). On April 19, 2010, state agency psychological consultant, Pedro M. Ferreira, Ph.D., affirmed Dr. King's findings. (Tr. 431).

### 3.    The Administrative Hearing

On April 28, 2017, the ALJ conducted an administrative hearing, at which both Ms. Williams, and VE, Mr. Schmidt, testified.  (Tr. 464).

### A.    Plaintiff's Testimony

Plaintiff testified that her condition has not improved at all since her prior award of benefits for the Closed Period (Tr. 468) and that her conditions preventing her from working since 2009 include "[l]imited range of motion, [ ] pain, anxiety, depression.  And [her] hands ha[ve] got worse, the tingling and numbness" (Tr. 468).  She testified that she has had multiple surgeries on both hands for carpal tunnel and trigger thumbs, none of which have improved her conditions. (Tr. 469, 470, 473).  She has limited range of motion and pain in her shoulders due to torn rotator cuffs and that she suffers from headaches and neck pain that radiates from the back of her head down her arm.  (Tr. 470).  Additionally, Plaintiff testified that she has problems with depression and anxiety, the majority of days "hat[ing] to get out of bed" and "can't drive certain places no more."  (Tr. 470).  "Pain has changed [her] whole quality of life" preventing her from doing things she used to do such as "shopping, traveling, doing thing with [her] grandchildren" and her independence overall.  (Tr. 470).  She currently lives with her daughter and two grandchildren (Tr. 470) but cannot do any household chores (Tr. 471).  Plaintiff testified that she can sit and stand comfortably for 10 to 15 minutes and can walk comfortably for 15 to 20 minutes.  (Tr. 471-72). When asked about the side effects from her medications, Plaintiff testified that she is drowsy, dizzy, lightheaded, constipated, and that the medications affect her memory.  (Tr. 473).

### B.    Vocational Expert's Testimony

Mr. Schmidt testified as to Plaintiff's past work history which included her work as a nurse assistant which Plaintiff performed at the heavy exertional level.  (Tr. 477).  Mr. Schmidt was

asked by the ALJ to consider hypotheticals involving an individual of Plaintiff's "age, education, and work history who can perform work at the light exertional level, who can occasionally climb ramps and stairs but never ladders, ropes, and scaffolds, who can occasionally balance, stoop, kneel, crouch, and crawl, who can frequently reach, handle, and finger with both arms, and who can have occasional exposure to extreme cold, vibration, and hazards." (Tr. 477). The ALJ asked whether this hypothetical person could perform the past work done by Ms. Williams. (Tr. 477). Based on this information, Mr. Schmidt testified that they could not perform Plaintiff's past work. (Tr 477). The ALJ then asked if there would be jobs that this hypothetical person could perform and Mr. Schmidt identified the following jobs: companion, garment sorter, fruit cutter, and produce weigher.[8] (Tr. 477-78).

The ALJ then changed the limitation on the use of hands and arms from frequently to occasionally and asked Mr. Schmidt if this change would affect a person's ability to be employed. (Tr. 478). Mr. Schmidt testified that this change would provide for a "reduced range of light, unskilled work" and referenced the following jobs: fruit distributor, bakery line conveyor, counter clerk, all of which are classified as light, unskilled work. (Tr. 478-79).

When questioned by Plaintiff's counsel, Mr. Schmidt was asked whether an individual with "no ability to use their dominant hand to reach, handle . . . finger, or feel" could work any of the job previously identified. Mr. Schmidt responded that they could not. Plaintiff's counsel then gave Mr. Schmidt the following hypotheticals and asked if the limitations would preclude all competitive work. Mr. Schmidt answered in the affirmative for all:

---

[8]     Mr. Schmidt testified that the companion job (which is classified as light and semi-skilled) would utilize transferable skills from Plaintiff's prior work. The remainder of the jobs are classified as unskilled, light occupations.

"if an individual were limited to sitting for no more than four hours in an eight hour day, and walking and standing for no more than 20 minutes or less in an eight hour day" (Tr. 480).

"if an individual could stand or walk for no more than two hours in an eight hour day and were limited as such that they could only lift up to ten pounds on no more than an occasional basis" (Tr. 480).[9]

"[i]f an individual were so limited that they needed to miss two or more days of work per month on a consistent basis due to their medical impairments" (Tr. 480).

"if an individual had serious impairments with their attention and concentration and their ability to interact socially with coworkers, supervisors, and the general public" (Tr. 480-81).

"if 30% of the day an individual were not able to maintain their attention and concentration, in addition to that they would not be able to interact appropriately with coworkers, supervisors, and the general public" (Tr. 481)

## C. The ALJ's Findings

On June 7, 2017, the ALJ issued the following findings (Tr. 440-51):

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2013.

2. The claimant did not engage in substantial gainful activity during the period from April 25, 2009, through her date last insured of June 30, 2013 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: right shoulder impingement, rotator cuff tear, carpal tunnel syndrome, degenerative disc disease of the cervical and lumbar spine, and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

---

[9] To this hypothetical, Plaintiff's counsel asked Mr. Schmidt if the "individual would be limited to no more than sedentary work according to the DOT and the Social Security regulations." Mr. Schmidt answered "yes." (Tr. 480).

5.      After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could only occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; frequently reach, handle, or finger with her bilateral upper extremities; and have occasional exposure to extreme cold, vibration, and hazards.

6.      Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on May 30, 1967, and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from April 25, 2009, through June 30, 2013, the date last insured (20 CFR 404.1520(g)).

## III.   LEGAL STANDARDS

### A.      Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.   *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).   A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must support its assertion either by citing to "particular parts of materials in

the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

### B. Review of the ALJ's Findings

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190-91. The Court's review is limited to the evidence that was presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). Evidence that was not submitted to the ALJ can be considered, however, by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has made clear that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by

countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (*e.g.*, that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV.    DISCUSSION

### A.    Disability Determination Process

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the Social Security Income ("SSI") program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of SSI as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Zirnsak v. Colvin*,

777 F.3d 607, 611-612 (3d Cir. 2014). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of nondisability when claimant is engaged in substantial gainful activity); *Zirnsak*, 777 F.3d at 611. If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *Id.* If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (20 C.F.R § 404.1520, Subpart P, Appendix 1) that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Zirnsak*, 777 F.3d at 611. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *Id.* If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating that claimant is not disabled if claimant is able to return to past relevant work); *Zirnsak*, 777 F.3d at 611. A claimant's RFC "is the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1); *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1545(a)(1)). "[T]he claimant always bears the burden of establishing (1) that she is severely impaired, and (2) either that the severe impairment meets or

equals a listed impairment, or that it prevents her from performing her past work." *Zirnsak*, 777 F.3d at 611 (quoting *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of nondisability when claimant can adjust to other work). At this last step, ". . . the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Zirnsak*, 777 F.3d at 612 (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)). In other words, the Commissioner ". . . is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). In making this determination, "the Commissioner uses the RFC assessment, . . . and the testimony of vocational experts and specialist." *Zirnsak*, 777 F.3d 612. "'Ultimately, entitlement to benefits is dependent upon finding the claimant is incapable of performing work in the national economy.'" *Zirnsak*, 777 F.3d 612 (quoting *Provenzano v. Comm'r*, Civil No. 10-4460 (JBS), 2011 WL 3859917, at *1 (D.N.J. Aug. 31, 2011)).

**B.      Issues Raised on Appeal**

On appeal, Plaintiff raises three arguments in support of remand:  (1) the ALJ erred in failing to consider Plaintiff's daily activities and side effects of her medications in assessing the credibility of her subjective complaints, (2) the ALJ erred in the findings as to Plaintiff's physical limitations, and (3) the ALJ erred in finding that Plaintiff's mental impairments were not severe. (D.I. 15 at 5, 8, 15).

1. **The ALJ's Consideration of Plaintiff's Daily Activities and Side Effects of Medications.**

Plaintiff argues that "[i]n finding Ms. Williams' subjective complaints not to be credible, the ALJ referred only to the lack of objective evidence or lack of medical evidence" and did not perform "any of the analysis required by 20 C.F.R. § 404.1529(c)(3)," including addressing Plaintiff's activities of daily living and the side effect s of her medications. (D.I. 15 at 5-6).

Credibility assessments involve a two-step process. First, Plaintiff must provide objective medical evidence showing a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms to determine the extent to which they limit Plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1529(c)(2). "Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms . . . ." 20 C.F.R. § 404.1529(c)(2). Other relevant information includes what may precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 404.1529(c)(3).

The ALJ should reject claims of subjective complaints if the ALJ does not find them credible. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). The Court, moreover, should "ordinarily defer to an ALJ's credibility determination." *Reefer v Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). Here, in accordance with the regulatory two-step process, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms," but "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 445).

The ALJ noted that the "[o]bjective test results and examination findings do not support the degree of pain or functional impairment alleged by the claimant." (Tr. 445). More specifically, the ALJ discussed that the lower back testing revealed no significant degeneration, herniation, or nerve root involvement, and the upper extremity EMGs showed no cervical radiculopathy. (Tr. 447, 416, 1441 (electrodiagnostic studies showing no evidence of cervical or peripheral radiculopathy), Tr. 2018-19 (normal cervical spine MRI; lumbar spine MRI showing "minimal" disc bulge with no protrusion or stenosis)). Further, the ALJ noted that "[e]xamination findings consistently included a normal gait, negative straight leg raising test, and no documented motor or neurological deficiencies in the claimant's legs." (Tr. 447). Likewise, with respect to her upper extremities, injections, medication, and chiropractic adjustments improved Plaintiff's range of motion and reduced her pain. (Tr. 446-47).

Contrary to Plaintiff's assertion that the ALJ "made the classic error of relying on objective evidence alone" (D.I. 15 at 6), the ALJ recognized that "pain can sometimes suggest a greater level of severity than shown by the objective evidence alone." (Tr. 448). He noted, however, other factors that cast doubt on Plaintiff's claims of disabling pain. For example, he discussed how Plaintiff's refusal of treatment, such as "surgery, physical therapy, and orthopedic management for her carpal tunnel syndrome, back pain, and shoulder problems," was "inconsistent with her complaints of disabling pain." (Tr. 448).[10] The ALJ noted that Plaintiff was frequently non-compliant with her medication and recommendations for exercise, smoking cessation, and follow-up treatment. (Tr. 448). Plaintiff's failure to pursue treatment and treatment non-compliance are valid reasons to discount her claims of disabling pain. *See Bacon v. Colvin*, 2016 WL 556727, at

---

[10]     The ALJ noted that despite Plaintiff's complaints of worsening pain since 2008, she continued to rely on Dr. Glassman for treatment and did not seek a neurological referral for testing or treatment for her pain, or a second opinion for pain management. (Tr. 448).

*8 (D. Del. Feb. 12, 2016) (Sleet, J.) (finding that the claimant's failure to follow the prescribed treatment "is highly relevant in evaluating credibility"); *Maguigan v. Astrue*, 2010 WL 3081336, at *11 (D. Del. Aug. 5, 2010) (Sleet, J.) ("The court agrees with the Commissioner that [the claimant's] failure to follow treatment undermines her credibility . . . .").

As to side effects of Plaintiff's medication, the ALJ considered those in rendering his determination. The ALJ referenced Plaintiff's testimony that she experienced side effects, including dry mouth, fatigue, dizziness, and vomiting (Tr. 445), but noted that, despite Plaintiff's subjective complaints of side effects,[11] Dr. Glassman indicated in November 2009 that Plaintiff's medication caused no serious side effects, and the medication allowed her to better care for her children, grandchildren, and mother. (Tr. 446-47, 204-05). Likewise, in January 2010 and June 2011, Dr. Glassman notes found that Plaintiff had no adverse side effects from medications. (Tr. 447, 427, 1377). In 2012, Dr. Glassman stated, Plaintiff was "handling [her] medication well." (Tr. 1454). And in 2013, Plaintiff reported that while on her medication she could drive and function. (Tr. 446).

Finally, as to Plaintiff's daily living activities in the ALJ's assessment of Plaintiff's symptoms, an ALJ is not "required to recite the credibility factors listed in § 416.929(c)," and need only "make 'specific' findings on credibility that are supported by the record and sufficiently clear as to what weight was given to the testimony and why." *Clark v. Astrue*, No. 12-3781, 2013 WL

---

[11] Plaintiff's subjective complaints – without objective support – are insufficient. *See Morrison v. Barnhart*, 78 Fed. App'x 820, 824-25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion."). As the Third Circuit has recognized, "[d]rowsiness often accompanies the taking of medication," and RFC limitations are warranted only if the record evidences serious functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002); *see also Grandillo v. Barnhart*, 105 Fed. App'x 415, 419 (3d Cir. 2004) (rejecting side-effects argument where claimant did not present medical evidence demonstrating that she suffered from medication side effects).

2036662, at *9 (E.D. Pa. Mar. 11, 2013), report and recommendation adopted, No. 12-3781, 2013 WL 1982351 (E.D. Pa. May 13, 2013). Here, the ALJ made the required findings and his findings are entitled to deference.

## 2. The ALJ's Findings as to Plaintiff's Physical Limitations.

The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could only occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; frequently reach, handle, or finger with her bilateral upper extremities; and have occasional exposure to extreme cold, vibration, and hazards. (Tr. 444). Plaintiff asserts that in his RFC finding "[t]he ALJ simply rejected all of the treating medical source statements of record despite the absence of any contrary medical opinion evidence" and "concoct[ed] an RFC finding without any supporting medical opinion evidence." (D.I. 15 at 8).

In reviewing the record to make an RFC assessment, the ALJ must consider all relevant medical opinion evidence and all other relevant evidence in the record. 20 C.F.R. § 404.1527(b); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The ALJ must consider limitations imposed by an individual's impairments, even those that are not "severe." 20 C.F.R. § 404.1545(a)(2)-(3). The ALJ must allocate weight to each medical opinion upon which he relies. *Shaud v. Colvin*, No. 15-2278, 2016 WL 1643405, at *7 (D.N.J. Apr. 26, 2016). And, the ALJ's RFC determination must "be accompanied by a clear and satisfactory explanation of the basis on which it rests." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).

Here, the ALJ found that Ms. Williams could perform light work with frequent reaching, handling, and fingering. (Tr. 444). The medical opinions of Dr. Borek (Social Security's

reviewing physician) which was purportedly given "some weight" by the ALJ, and of Dr. Glassman, Plaintiff's primary treating physician, agreed, however, that she could perform only sedentary work with greater hand, arm, and shoulder limitations than those adopted by the ALJ.

With respect to Dr. Borek, the ALJ failed to articulate his reasons for finding the opinion to be unsupported and failed to cite any specific medical findings to support his position. In addition, it appears that the ALJ improperly relied upon speculation as to the objective findings of record to determine that Ms. Williams could perform light, instead of sedentary, work. *See Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000) ("The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts . . ."); *see also Plummer v. Apfel*, 186 F.3d 422,429 (3d Cir. 1999); *Smith v. Califano*, 637 F.2d 968,972 (3d Cir. 1981) (both holding that an ALJ is not free to employ his own expertise against that of the medical sources of record). And while the ALJ purported to rely on objective findings to support his RFC, he failed to address objective medical findings supportive of Dr. Borek's opinions, including an EMG showing moderately severe right median neuropathy across the wrist (carpal tunnel syndrome) (Tr. 1041-42); a lumbar disc bulge with slight disc desiccation (which is progressive) (Tr. 2019); an ultrasound confirming a left rotator cuff tear (Tr. 1448); and a final EMG showing bilateral carpal tunnel syndrome (Tr. 911).

As to Dr. Glassman, he was a treating physician and his opinion should be accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Fargnoli,* 247 F.3d at 42. "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."

*Id.* (citing *Newhouse v. Heckler,* 753 F.2d 283, 286 (3d Cir.1985)).   Here, however, the ALJ dismissed Dr. Glassman's opinion because "his records do not support the limitations indicated, which are inconsistent with the record as a whole."  (Tr. 449).  In doing so, however, the ALJ pointed to no specific inconsistencies.  (Tr. 449).  And he pointed to no contradictory medical opinions.  (Tr. 449).  An ALJ "cannot reject evidence for no reason or the wrong reason."  *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (quoting *Cotter v. Harris*, 642 F.2d 700, 705, *reh'g denied*, 650 F.2d 481 (3d Cir. 1981)).   "[A]n ALJ is not free to set his own expertise against that of physicians who present competent medical evidence."  *Morales v. Apfel*, 225 F.3d at 317 (citing *Plummer*, 186 F.3d at 429); *see also Kelly v. Railroad Retirement Board*, 625 F.2d 486, 494 (3d Cir. 1980) ("An ALJ may not reject professional medical evidence on the basis of his own observation").

Here, the ALJ appears to have substituted his lay opinion for the medical judgment of Plaintiff's treating specialist and the opinion of the state agency doctor.  His rejection of those assessments is unsupported by the evidence.  The Court remands for further findings.

### 3. The ALJ's Finding That Plaintiff's Mental Impairments Were Not Severe.

With respect to Plaintiff's mental impairments, Plaintiff argues that the ALJ erred in two ways:  (1) by not accounting for her mental impairments in determining her RFC and in the hypothetical question asked of the vocational expert and (2) in finding that Ms. Williams' mental impairments were not severe.[12]  (D.I. 15 at 15-18).

Here, the ALJ did not fail to account for Plaintiff's mental limitations in formulating the RFC or err in his finding that her impairment was not severe.  The ALJ considered the "limited

---

[12]     Plaintiff states that it "should also be noted that the ALJ's finding of no severe mental impairments is not supported by substantial evidence and should not be affirmed." (D.I. 15 at 16).

medical evidence" addressing Plaintiff's mental health that was available from April 2009 through June 2013. (Tr. 442). That evidence showed that medication controlled Plaintiff's symptoms; that there were significant gaps in her treatment history; and that her mental status exams were consistently unremarkable. (Tr. 441-42). The ALJ recognized that Plaintiff had mild limitations in the functional areas of interacting with others and concentrating, persisting, or maintaining pace, and no limitations in understanding, remembering, and applying information, and adapting or managing oneself. (Tr. 442-43). And he properly concluded that Plaintiff's mental impairments did not cause more than a mild limitation in any of the functional areas, and therefore, the impairments were non-severe and did not warrant an RFC limitation. (Tr. 447).

As noted above, the Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). It is not this Court's role to re-weigh the evidence before the ALJ. *See Gantt v. Comm'r Soc. Sec.*, 205 Fed. App'x. 65, 67 (3d Cir. 2006) ("[O]ur role is not to weigh the evidence; our role on review is limited to determining whether substantial evidence supports the ALJ's denial of disability benefits."). Here, the ALJ considered all of Plaintiff's diagnosed mental limitations and provided a basis for excluding that impairment in his RFC formulation. The Court finds that the ALJ's RFC assessment as to mental health impairments is supported by substantial evidence.

## V.    **CONCLUSION**

For the reasons stated, the Court will grant-in-part Plaintiff's motion and deny Defendant's cross-motion for summary judgment and remand for further proceedings. An appropriate Order will issue.